China Unicom, America's Operations Limited v. Federal Communications Commission I'd like to reserve four minutes for rebuttal, please. Speak up a little, would you? Oh, yes. Does that work? Good. So, good morning, Your Honors. I'm Keith Bradley, here for the petitioner, and I'll just refer to it as CUA. So the government has invoked national security in this case, but it is actually about much more. There's no national security limitation on the authority that the FCC is claiming. If they're right, they can revoke any certificate at any time for any reason that they can tie to any of their multifarious policy missions. I count at least eight, maybe 12, depending on how you count them, in their statute of various policy missions. Well, but the specific question we have in front of us is whether they have revocation authority with respect to national security grounds. That is the specific question presented, but I submit to you that they have not offered any theory, and I can't think of one, that would limit that authority to national security. It is the government's theory is that there is an inherent or implicit authority to revoke these certificates for any reason. What the Lord giveth, the Lord can taketh away. That's their theory, isn't it? That is their theory. I personally do not think that they are the Lord. I think they are just the FCC. And there are multiple ways into this statute to see that Congress did not give them that authority and did not intend for them to have it. Let me give you a hypothetical. Suppose the United States government intercepts communications between China Unicom and the Chinese Communist Party, and China Unicom says, yes, we will provide you with the United States certificate you requested. At that point, can the FCC revoke the registration license for China Unicom in that instance? So as a general matter, the government – I'm going to answer that question, and then I have a second observation that's going to follow up on it. But first thing is, as a general matter, the government is not without tools. I don't think that revocation is a tool that Congress gave them for that circumstance or any other, but what you just described would probably violate a number of statutes. There are criminal penalties at stake. The FCC also has the authority to issue cease-and-desist orders for violations of its regulations or for unjust or unreasonable conduct. And of course, outside the FCC, the government has various powers, such as IEPA. So there's a lot that the government can do and a lot that the FCC can do. This just doesn't happen to be among them. So the FCC does not have revocation power even in that instance? We have cabined also – I want to be careful. In our discussion in the FCCs, I think we have left aside the question whether they could revoke for an actual violation of regulations. I don't think that they could, but that turns out not to be relevant to this case. But yes, in answer to your question, I don't think in that circumstance they could revoke. And I don't think – and my second observation is that is not particularly surprising. I'll give you an example. We've learned in the last couple years that the electricity industry is pregnant with national security. There's no federal agency that has the general authority to shut down a transmission operator or a generator. I'm going to leave aside a couple, like nuclear power, for example. But as a general matter, there's no federal agency that has the authority to shut them down for national security concerns. So in answer to your question, that is ultimately a decision that was Congress's to make and that they made. Well, the statute says that they can include conditions in the certificate. And one of the conditions that's included in the blanket license is that there's a power to revoke and that they will continue to review national security concerns. So why doesn't that give them sufficient authority and distinguish the case from the C-train? Two things. One is that in Delta Airlines, this was exactly the argument that the agency made and that the Supreme Court rejected in that case. The agency said, ah, there is an implicit condition that we can revisit these certificates later. And the Supreme Court said to that, your general condition that you will revisit it later would amount to doing indirectly what Congress has not allowed you to do directly. Is it your view that when they first allow a company to get a certificate, they can assess the national security risks and they have to make their best guess going into the future because once we grant it, it's like the law of the Medes and Persians. It's irreversible and irrevocable and you're stuck with them and you can never look at national security again and change your mind. That's how we should read this statute. I think that is what Congress set up. That is what they set up in the Interstate Commerce Act as well. And I'll point out also that in C-Train- The Interstate Commerce Act is very different and in C-Train, there was an express limit on the ability to impose conditions and that proviso that limited the power to impose conditions was load-bearing for the court in C-Train as to why the condition authority did not actually give them the ability to make the change they want. We don't have any of that kind of limitation on their power to impose conditions on the face of the statute. I think we do actually even in the face of the statute. That would be relevant here to Barlow? Yeah, so let me point it out. In the key sentence that you're thinking of in 214C, it's the one that says, once the certificate is issued, the company may continue to operate. It says comply with the conditions. It does not say so long as the conditions hold. It says comply with, and that word comply is important. That sounds to me like something that you do or don't do. And as the FCC has said in this case, their view is that they're not suggesting that the company didn't comply with conditions. Their view is that the certificate can be revoked because of conditions beyond your control. So in other words, it's not about compliance with conditions, it is about the conditions out there have changed, and that's not what the statute says they can impose. I will say also that that same sentence says that once the certificate is issued, I think we can all agree the certificate was issued, that was a moment in time. Once the certificate is issued, the company may continue to operate while complying with the conditions, which again is conduct. It may continue to operate without further approval. But what the FCC is doing in this case is precisely they think that they are allowed to engage in further approval review, et cetera. They do not approve today, but that's contrary to the statute, which says that the approval that was needed was at the issuance. And Judge? Pardon me, sir. Suppose that the FCC had taken on this case on the grounds that your client had deficient installations and had to put in further installations, and your client refused to put in the additional installations. Couldn't they revoke them? I just want to make sure I understand your hypothetical correctly. So it sounds like you're suggesting the certificate issues with a condition that says you need to put in an X and a Y. I think that's 214D, right? So they put in, and then they put in only an X, and the commission says, wait a second, you were supposed to put in an X and a Y. Couldn't they then revoke the certification? So that is a, I don't think it necessarily follows that they could revoke in that circumstance as opposed to simply enjoining or revoking. Maybe all they could do is say $1,200 a day? No, I think what they could also do is if you have not complied with the conditions, then you are out of compliance with the statute, right? So what they could do is they could order you to cease operations until you have complied. You can't go forward until you've put in the Y. And what if, I see, so, but that would be tantamount to revoking the certification if your client didn't want to comply. If you refuse to comply with your conditions, then you cannot operate, which the statute does say, yes. In this case, of course, there is no condition that they say we didn't comply with. It is this generalized, it's a different meaning of the word condition. It is we reserved the right. We reserved the decision that we would review your certificate in the future, and I come back to again. That is what Delta Airlines, exactly what the Supreme Court said you can't do in Delta Airlines. But there's more. There are more ways to get into how Congress, the many ways in which Congress signaled that they're not supposed to be able to do this. 214 itself, the, you should just look like you're asking a question. I don't have a question. I'm just listening. Okay. So if you want to build a new service, the statute says that you need permission, and if the FCC wants the carrier to build a new service, the statute says they can order you to do it. If you want to shut off a service, the statute says you need the FCC's permission. And if the FCC wants you to stop a service, it doesn't say revoke. It doesn't say they can order you to shut it off. What it does say is that if you are out of compliance with the statute, that they can seek an injunction in court. So this is a way in which Congress considered all the permutations. If they had intended the FCC to have revocation authority, it would say so. If you think about the 312, which is how Congress dealt with revocation of spectrum license. Spectrum license is different from common carrier. Spectrum license is use of a public resource, and so the FCC has essentially plenary authority, and the statute is set up so those spectrum licenses, it is known, are not even a property, right? They are temporary, eight years, but temporary. They require renewal. And yet, for those, Congress specified standards and procedures for revoking them. It is startling to me to think that Congress would then have intended for the FCC to be able to revoke these certificates and have said nothing about what those standards and processes were. Again, also, in the face of a statute that says once the certificate is issued, you are entitled, may, you may continue to operate without further approval. That's the opposite of what Congress did in Section 312. It's not also just C-Train. It's not just Delta Air Lines. And it's not just old cases. This happens again and again. We found a few more as we were preparing for our argument in a case called IV Sports versus Burwell. Then Judge Kavanaugh wrote that the FDA is not allowed to revoke a clearance for a medical device without complying with procedures set forth by Congress. Again and again. I go back to, also, C-Train. So this case is about national security, although, as I said, there's no national security limit on their theory. They have suggested that it is, and I think they're right, that if their theory is correct, they can revoke any certificate, any time, for any reason. But in C-Train itself, that statute made national security a mission of the ICC. And it was 1947, just after a war in which shipping was a theater of war, in which commercial cargo shipping was a theater of war. And yet that Supreme Court had no qualms about saying, no, where the statute doesn't specifically call for revocation, you're not allowed to revoke. I go back, Judge Bea, to your comment. I mean, the statute in C-Train, there were different chapters that govern different aspects of commerce. And the court made a point out of saying that they specifically put the revocation authority in one and not in the other. And for those who look at legislative history, it was really clear that there was, they actually asked for that to be done in that disparate way. So there clearly was a decision not to add the revocation authority to the one title. And then you also had the restriction on the condition authority as a means of, you couldn't backdoor it. So C-Train seems a little bit different. I mean, I understand your point that this is very potentially broad, but it's a different analysis from C-Train. It is slightly different. But to go back to these three different chapters in C-Train, if I could, so one of those chapters was enacted at the same time as the whole statute. The Communications Act was second in time. And then there was another chapter that went into the ICE, the Transportation Act, I think it was called at the time, that was the motor carrier provision. The motor carrier one is the one that allows revocation. And then the third one was in 1940, which was the Water Carriers Act that was at issue in, chapter that was at issue in C-Train. So, to think that it's because the commission, the head of the commission asked, because of that legislative history of the 1940 statute, that would mean that the original one, right, the one that predated the Communications Act, that one would allow revocation, but that's exactly the opposite of what the court says. The court says that all three of those, two chapters, three chapters, two of those don't allow revocation. One of those predated that legislative history and one post-dated. You almost seem to be extracting from, trying to extract from C-Train a clear statement rule that if you want to have revocation authority, it must be clearly stated. I'm not aware of any such clear statement rule. You just look at the statute in context and read the terms as to whether it embraces revocation authority. But there isn't, C-Train is not a clear statement case. I don't think I'm suggesting a clear statement rule, but rather, to go back to what Judge Bea was saying earlier, what the Lord giveth, the Lord taketh away, that it's different. There is a notion in the FCC's briefs, I think, that there is an implicit implied that if you grant certificates, you can take them. What C-Train teaches is no, it's not the same. It is not implicit in there and you need something in the statute. Whether it is clear or, you know, however one gets to the interpretation, what C-Train teaches is that revocation does not flow automatically from granting that you need authority for the revocation. And then we look at the statute. And again, I mean, I think we're all agreed that the statute doesn't, the FCC I believe agrees that the statute doesn't say revocation. Isn't there a portion of the statute which allows the FCC to revoke radio licenses? Yes, there is. And isn't that part of the same statute that we're dealing with here? Yes, it is. Enacted at the same time, I believe. But following up on Judge Collins' question, I understand your point that the FCC's position, you know, they're asserting incredibly broad powers for themselves. On the other hand, I mean, 214C does use very broad language saying that the agency can attach to the issuance of the certificate such terms and conditions as in its judgment the public convenience and necessity may require.  It is. Although, if I may, and I see that I'm running into my four minutes, so I'd just like to answer this question and then sit down. They don't actually point to any condition that's attached to the issuance that says that they will reconsider, like broadly speaking for national security. What's in those orders from the late 90s is that they will revoke in cases of egregious misconduct or competitive concerns. I thought the foreign one has a very broad statement that, you know, we emphasize we have the authority to enforce our safeguards, to find conditional grants of authority, and the revocation of authorizations, and then it's got lengthy paragraphs about national security and making very clear that they're going to continue on an ongoing basis to evaluate national security. And I guess your view is that you can take this blanket license with these conditions and the national security part ongoing, that just kind of doesn't go anywhere because it can't, they can't use the revocation they've asserted that they've claimed in the blanket license? Well, a couple things. One is a blanket we reserve the authority to revoke whenever we, you know, for whatever reasons, that's what Delta Air Lines forecloses. The second thing is... How does Delta Air Lines foreclose that? Delta Air Lines says that you cannot, that to reserve the authority to, and I could be wrong, this could be C-Train, that to base this on there's a condition that you will then continue to think about it and revoke it or amend it later would allow the agency to do indirectly what it cannot do directly. If Congress says, if Congress's view is that you should not revoke, you can't just put in, well, we reserve the right to revoke. But my second observation, though, is to go back to the words of the statute, it tells you what kinds of conditions there could be because that sentence says you may continue to operate without further approval if you are complying with the conditions. And this is, you know, that whatever's going on in the geopolitical situation and their assessment of the national security, that is not a condition that the company could or could not comply with. Their view is the opposite, that they can revoke for circumstances that have nothing to do with your compliance, and that's what, as they put it, beyond the company's control. So, I know I've very much run out of time. I'm going to give you time for rebuttal. We've given you a lot of questions. All right, we'll hear now for counsel for the commission, Mr. Dunn. Okay. Good morning, Your Honors. My name is Matthew Dunn, representing the FCC and the United States. We're going to talk a lot about revocation authority, but I want to emphasize at the outset that as far as the substance of this case goes, you can affirm on some very straightforward, undisputed grounds. First, that this company is controlled by the Chinese government. Second, that the Chinese government engages in espionage. And third, that this— Mr. Dunn, at the beginning of World War II, we passed an act saying we couldn't do business with Germany. Can't Congress do that now with the Chinese Communist country? Could it do that? Yes. I think it—sure. Has it done so? It hasn't. But I think that that—it doesn't—the fact that there are other routes to this outcome doesn't mean that the agency is not— All the routes—we can't avoid the 214 revocation authority issue. No, no. Here. Let's get into it. So, clearly, the 214 neither explicitly grants nor takes away the power to revoke. So, what this court is trying to do, like the C-train court, is reach the best reading of the statute. As I believe it was Judge Lee pointed out, the agency has very broad discretion in granting certificates, looking at the present and future public interest, and can impose a wide variety of conditions. And so, in this case, I would submit that if—trying to reach the best reading of the statute, that it makes very little sense to say that there's a kind of one-way ratchet, or as I believe one of the judges pointed out, you better get it right the first time, because whatever happens afterwards, even if 20 years of geopolitical change, you could never revoke afterwards, even if you could have denied it in the first place. Could the FCC have put in the license that it gave CUA at the initiation of it, if at any time the executive finds that national security is endangered, we reserve the right to revoke? It could have written those words. And it didn't? No, but I will say, as I think someone else has pointed out, it came close. So, it said it reserved the power to revoke, and it would not have granted these— Where is the reserved power to revoke in 214? The power to revoke is not in 214, but what I'm saying is that it granted licenses under the assumption that it had this power to revoke, and it reserved that. What would the assumption be based upon? So here, we're moving away from the reservation of authority to does it have the power to revoke, and that I return to the best reading of the statute. The 214 gives the broad discretion, and then 154I is a kind of necessary and proper clause that the agency can carry out as necessary. Necessary and proper clauses require a foundational right to be exercised. Absolutely. And here, the foundational right is this granting of a right. But the foundational right to revoke is not there. No, that's the ancillary. In order to make sense of its power to grant, it needs this power to revoke, because the alternative is the situation we find ourselves in here, where there's really no dispute that this company is controlled by the Chinese government, the Chinese government engages in espionage, this company sits at a privileged place in the nation's network and can use that power to engage in espionage, and they argue there's no power to revoke. They were also pointing out that there's no logical limit to your theory, that if you have this revocation authority, you can do it on any grounds you feel like it. Well, grounds, of course, they're not unlimited grounds in the statute. It has to be related to our public interest in the telecommunications network. But, of course, there's always – the APA is the backstop here. So if the FCC – this case is subject to APA review, and that's why we're here. If the agency were to say – Yeah, but I mean, this is – I mean, the FCC's assertion of power is pretty breathtaking here. I mean, you're saying, despite the fact the company spends millions of dollars in investment, the FCC can then revoke the certificate based on a very vague public interest standard, which I assume you'll argue is entitled to Chevron deference. And then we have – when we review, it's arbitrary and capricious review. I mean, basically, that's deference after deference after deference. I mean, it seems like there's no real limit here. Well, I wish it were the case that we never lose on arbitrary and capricious review, but unfortunately for us, that's not the case. That has teeth to it. Imagine a situation in which national security was not at stake and the FCC said, Verizon, we've changed our mind and we think that we should have fewer telecom providers and we're taking away your rights to be an Internet provider. The agency would then have to explain under very searing searching review why that made sense, including reliance interest, right? So, of course, when an agency changes its position, reliance interest is always at issue. So I think Verizon would have an extremely strong argument that the agency had acted arbitrarily and capriciously. Suppose – hypothetically, I have no idea if there are any Ukrainian companies that have certificates. They're issued these certificates and then an executive branch agency says, well, we have reports that there's a lot of public corruption in Ukraine and they may be susceptible to these corrupt actors. Could the FCC then cite public interest factors and say we're going to revoke the certificate? It could try, but then again – so then part of the record in that case would be how strong is the showing that Ukraine is actually corrupt and presents in the U.S. a public – sorry, a threat to public national security. So here, there's very little dispute about the fact that China represents a threat. If in your hypothetical, the agency would have to make a strong showing that the same was true there. So it's not at all a blank check. I think it looks like a blank check here because the facts of this case are so clear cut, but in another case, it would be quite different. Your position is basically that it's – the revocation authority would be bounded in two respects, if I'm understanding you correctly. The first is that they can only rely on such grounds as would have been grounds to deny the issuance of the certificate in the first place. Does that make sense? The same basket of factors that can be considered at the first phase are the only factors that can be considered at the later phase where you're deciding whether to revoke. And the second would be that the second box is further limited by the fact that reliance interests may have arisen that then may – are also a limitation and a factor that would have to be considered at the second phase, and then that would be subject to APA review. That would be – those are both correct. Are there any additional limitations or restrictions on the authority at the second phase? Sorry, the second phase meaning APA review of a decision – Other than you're limited to the factors that are specified for making the original decision, you will have additional factors that are not present at the original decision such as reliance interests that also will have to be considered, and then there will be the constraints of APA review. Are there any other material limitations on the exercise of the authority you're claiming here? I think that is captured, but the first one, factors on which it could be denied in the first place, I think encompasses a lot of information and a broad record. Here there's a very strong evidentiary showing of what that threat is. I think sufficient – almost certainly sufficient to merit denying in the first place. So if we have a new Chinese-controlled provider that wanted to – Chinese government-controlled provider that wanted to be authorized, there would be – I think the agency would have very strong reason to deny it. So in your basket of reasons to deny in the first place could be a lot of different kinds of factors, and all of those have to be supported by substantial evidence. So that is a serious check on the agency's authority. Are you relying on the terms and conditions only in the foreign order or also the domestic order? No, I think the domestic order also matters in that it's clear that – But don't you refer to things like abuse, actual abuse? I mean, what's the basis under the domestic order? The domestic order says – the agency said we would not grant this blanket authority if we didn't retain the power to revoke. The situations it cites in that order are bad actors that had engaged in anti-competitive behavior, I believe, or anti-consumer behavior. So abuse is certainly a factor there, but I don't think that means it can be the only factor because that would mean that the agency is powerless to anticipate a threat, for example, a threat to national security, and it would have to wait until that was already happened and then could only pursue it retroactively. Do you have to rely on both orders to revoke the certificates? No, I think those are kind of alternate and independent bases of reservation of authority. Prior to the adoption of the blanket order approach, did the FCC prior to that include revocation authority as a condition in the certificates it issued prior to that? Not that I'm aware of. I think what's interesting about those orders is that the agency said – it used to go kind of retail one at a time and look at each provider and then insert, if necessary, conditions at that time. And up to the blanket, it didn't insert a revocation authority? Not that I'm aware of. I will point out that revocation was less necessary for most of the history of the agency when there were very few providers and basically the Bell System and a couple of other entities. Revocation was not really on the table or necessary at that time. With the changes in the 1990s and the change to a more competitive market, you have a lot more providers, including foreign-owned providers, that creates the necessity for this revocation. Making a point that Judge Collins made, the first grounds to revoke should be only those grounds that are allowed at the time of granting the petition. One of those grounds is public necessity and convenience. Can you imagine anything more diaphanous than that? Well, again, the agency would then be tasked with defending under the APA that it had a good reason to revoke and that, again, reliance interests were not unduly impacted. So that may sound broad, but this court or any other court in review of that kind of revocation would be tasked with— As not being with public convenience and necessity? That we would be sort of a second legislature finding out? It's an uncomfortable position. You sit in on APA review, but that is your job, unfortunately. And, again, we do lose under APA review, of course. So are there any exceptions to the blanket grant authority in the 1990s orders? I mean, are there carve-outs from them that some companies can't get a blanket? They have to do an individual one from the get-go? Only insofar as the blanket—the real blanket orders for domestic service and then international service, you still need— the providers still need a specific certificate of under 214. So China Unicom has those certificates. So the other order we're talking about from the 90s is the foreign participation order, which is about foreign-owned companies, whether providing domestic service or international service. So foreign companies do still need to come up one at a time and get— sorry, companies that are providing overseas service still need specific authorization. Okay. So in this instance, they acquired their certificate not just as a blanket, but also as an individual one. That's right. So those certificates are in the record. In those certificates, they state that— they highlight one of the recent foreign participation orders. So that's why we'd argue those should certainly have been sort of baked into those individual authorizations. We've hit on a couple of points that I wanted to address in response to Mr. Bradley's argument, but two points I did want to make. One is petitioner asserts that Delta Airlines takes off the table in an agency's authority to reserve revocation authority. They say you can't reserve the right to do what you can't do in the first place. I think Delta Airlines should be read a little more narrowly. What Delta Airlines was about, we assert, is an agency trying to get out of very specific procedures for how revocation was to happen. They didn't follow those procedures, and they said,  And there the court says, no, no, and it cites C-Train for this, you can't rely on an implicit power to essentially sidestep an explicit limitation. That's, I think, the limit that Delta Airlines puts on an agency's power to reserve a right, and that's not in play here. We're not trying to sidestep a specific set of procedures on how revocation is to happen. A second point I would address that came up was, the argument goes essentially, Title III, they assert, gives specific power to revoke, so doesn't that mean you don't have it here? And I would say there's good reason that Title II and III are structured differently. Title III is, as you know, a broadcast license. At the time the statute was written in 1934, that only lasted for three years, and then it would have to be renewed every three years. And so I think in that situation it makes sense that Congress would think, Well, this is going to expire anyway in three years. We should really structure and channel and limit the agency's ability within that three-year period to revoke. The company has a right to rely on that to continue for at least those three years. In Title II, what we're talking about today for landlines is a different circumstance. It continues indefinitely. So I think you don't, if there's no power to revoke, then that's going to go on forever. And it makes sense that where the agency needed to be limited under Title III, you don't have the same necessity under Title II. This we didn't talk too much about, or Mr. Bradley didn't talk too much about, but it came up, Section 214C gives the agency, or any party, the ability to go into court and get an injunction against essentially unauthorized service, is the way the last sentence of that I think should be read. Any operation contrary to the provisions of this section can be enjoined. So I think what that means is if you have an entity who is providing unauthorized service, either they just strung up some telephone lines without any authorization, or maybe they're doing it contrary to the terms of their license or something, the SEC or anybody else, the state attorney general or any party of interest, can go into court and get an injunction and say, stop providing unauthorized service. But that's no substitute for revocation, which is not about unauthorized service. The problem here is that the service, until it's revoked, is authorized. So we would say that the agency needs the power to revoke for the reasons that this case makes clear, and the power to enjoin unauthorized service is really not a substitute for that, and this statute is not a substitute. Do we have other questions? All right, thank you, Your Honor. All right. I think you've asked for four minutes for review. I'll give you the four minutes because we asked you a lot of questions and took up your time. I appreciate that, but I really have one point to make that's going to pull in two different sources from the briefs. As Mr. Dunn says, the ultimate corporate control is the Chinese government, and the FCC says that China over there engages in espionage, not CUA. I think we're all agreed the FCC does not say that CUA has done any of these things. I want to go back to the conditions, Judge Collins, that you pointed to earlier, so I took a moment to find the pull of the foreign participation order. The FCC has pointed to two things. Paragraph 19, which says we emphasize that we have authority to enforce our safeguards through fines, conditional grants of authority, and the revocation, our safeguards. Paragraph 19 tells you what those safeguards are. It is our dominant carrier safeguards. It's a competition protection against revocation in the case of market dominance. Paragraph 61 begins your discussion of national security, and it says we continue to find national security, et cetera, relevant to our decision to grant or deny. It doesn't say revoke. This is not merely my reading. In the Marpin case in 2003, which is discussed and cited in the briefs, Marpin urged the commission that they could rely on the foreign participation order as saying that they could revoke a certificate because of competition concerns outside the conduct of the certificated carrier, and the FCC said, no, we don't have the authority to revoke a U.S. carrier's authorization based solely on the misconduct of its foreign affiliate. But that's exactly so. Judge Collins, if you are thinking about the conditions that were built into the certificate, again, I think that those conditions have to be things that the carrier can comply with or not comply with. But the FCC's prior position from 20 years ago was that the foreign participation order did not reserve and that the commission did not have an authority to revoke certificates based on what other people, other companies, other entities were doing other than the security. So are you suggesting that the FCC violated the APA in adopting this new blanket order? Oh, absolutely, yes. But so I agree with Mr. Dunn that they do sometimes lose. In saying that there's an APA problem here, I don't want to suggest that that is an adequate check on their sweeping authority. I mean, as several of you observed, their public interest is a very broad standard, and if they are allowed to revoke for any consideration of public interest, that's not much. That's not really a check, unless you have further questions. All right. Thank you, counsel. Thank you both, counsel, for your helpful arguments. And the case just argued will be submitted, and that completes our calendar for today. Please rise.
judges: BEA, COLLINS, LEE